Marshall E. Livingston, J.
When this case was reached for trial and after a jury was drawn, the case was settled upon a stipulation. The stipulation provided that defendant Ithaca College (Ithaca) would pay the plaintiff the full amount agreed upon and that the court should determine the respective liability between the defendants Ithaca and New York State Craftsmen, Inc. (Craftsmen) upon the facts hereafter outlined.
In February of 1969 Craftsmen communicated with Ithaca relative to holding a craft fair at the school during the first week in August, 1969. On February 19, 1969, Mr. Comstock, Ithaca’s Director of Auxiliary Services, wrote a letter to Mrs. Morse, the representative of Craftsmen, and outlined the terms of the proposed leasing of the college premises for the trade show. Among the provisions was No. 5 (a) Insurance, which stated: “It is understood that the York State Craftsmen will carry comprehensive public liability and property damage insurance and will provide Ithaca College through the Robert S. Boothroyd Agency, Inc. of 312 East Seneca Street, Ithaca, New York with a Certificate of Insurance setting forth the bodily injury and property damage liability insurance coverage carried for the period of utilization of Ithaca College facilities. The Boothroyd Agency will advise the York State Craftsmen or its broker concerning the adequacy of coverage. The Certificate-of Insurance will indicate that a ‘ hold harmless ’ clause is made fart of the *833 comprehensive public liability and property damage insurance coverage.” (Emphasis supplied.)
The last paragraph of the letter read: “ If the above is satisfactory, please sign and return the attached copy which will serve as acceptance of this memorandum of understanding by the York State Craftsmen, Inc. Please advise me concerning any modifications or changes which you might require.”
The “ memorandum of understanding ” was accepted by Mrs. Morse for Craftsmen on March 2,1969, and accordingly, Craftsmen procured an O. L. T. policy with Aetna for the period of July 25, 1969 to August 13, 1969. The named assured was “ York State Craft Fair ”. Ithaca College was not set out as a named assured in its insurance policy, which would have settled the question.
There is no specific ‘ ‘ hold harmless ’ ’ or indemnification language set forth in the letter or in any other writing signed by the parties, and neither the certificate of insurance nor the insurance policy contains “hold harmless ” or indemnification agreements. The quoted language, therefore, constitutes an uninsured contractual agreement by Craftsmen to provide Ithaca with a ‘ ‘ hold harmless ’ ’ clause, whatever that means, for which there is no coverage provided by the insurance carrier and which is specifically excluded pursuant to the language of the exclusions “ a ”, “ d ” and “ n ” of the insurance policy. However, Craftsmen was never placed on notice of this fact at any time prior to trial by either Aetna, the insurance carrier, or its attorneys, and the carrier is now estopped from limiting its liability on this basis.
Thus, although the policy excludes ‘‘ liability assumed by the insured under any contract or agreement” (relating to such premises), nevertheless, I hold that Craftsmen would be liable to Ithaca and that Aetna must stand in Craftsmen’s shoes because ho notice was ever given to it of the fact that an occurrence such as this was specifically excluded under the policy as written.
Now, to a determination of what a “ hold harmless ” clause means as it was specifically denoted in the letter. The phrase means plainly an agreement to indemnify Ithaca for any 0. L. T. occurrence that happened in the building during the time Craftsmen was in possession.
The case of Levine v. Shell Oil Co. (28 N Y 2d 205) is in point. The intent of the “ memorandum of understanding ”, as Mr. Comstock designated it, was to have Ithaca’s facilities protected under ‘ ‘ comprehensive public liability and property *834 damage insurance ’ ’. The agreement was accepted and the loss occurred.
This was no unconscionable agreement. In this regard it is significant that Ithaca was under no legal obligation to allow Craftsmen to' operate the craft fair on its premises. Similarly, Craftsmen was not required to assume the responsibilities of the contract. In this transaction the indemnification provision was a part of the business relationship between the parties. If Craftsmen had reservations as to the scope of the agreement, it should have insisted on a different indemnification clause or refused to give its assent to the contract. Since Craftsmen apparently elected not to do so and has not demonstrated to this court that Ithaca was guilty of fraud or overreaching conduct, it is bound by the expression of intent to hold Ithaca harmless in the “ memorandum of understanding ” (cf. Levine v. Shell Oil Co., supra, p. 213).
Ithaca College, or its carrier, is entitled to full indemnification from New York State Craftsmen, Inc., also known as York State Craftsmen, Inc., York State Craft Fair, Ithaca, New York, or the Aetna Casualty and Surety Company.