OPINION OF THE COURT
Anne G. Feldman, J.
This case requires a determination whether defendant’s signature to a standard form contract prepared by plaintiff hospital legally binds him to pay his estranged wife’s hospital bill.
The form, defendant signed, which is the basis of the claimed liability here, reads as follows: "assignment of insurance benefits: I hereby authorize payment directly to the above named hospital of the hospital expense benefits otherwise payable to me but not to exceed the hospital’s regular charges for this period of hospitalization. I understand that I am ñnancially responsible to the hospital for the charges not covered by my group insurance plan.” Defendant testified convincingly and without contradiction that at the time he signed it his wife’s physical appearance and her declared mental state convinced him that she was near death, and that, under such circumstances, it did not occur to him to read carefully or question the implications of papers he was being asked to sign. Plaintiff does not suggest that any oral explana *969 tion was given to defendant about the contents of the form and the court believes defendant’s contention that in fact he signed his name without any knowledge that he was assuming a financial obligation.
Less than an hour thereafter Ms. McAdoo underwent emergency surgery for an ectopic pregnancy (defendant was not the father) and was discharged from the hospital eight days later. Defendant did not again visit his wife in the hospital and has had no contact with her since.
 The question is whether defendant is bound by his signature. It is settled law that as a literate, competent adult, defendant is ordinarily held legally responsible for his contractual obligations, once it is determined that he has signed the contract. However, there are circumstances under which a reasonable person might sign a contract, without reading or understanding it, so that requiring adherence to its terms would be grossly unfair. In such situations some courts have inquired behind the objective fact of the signature to the contract, into the circumstances under which it was signed and into the relative positions of the parties. The courts do so in recognition of the possibility that the contract in question may have been signed without opportunity for arm’s length negotiations.
The term "contract of adhesion” has been used to describe those contracts where there has been such judicial scrutiny (17 CJS, Contracts, § 10, p 581).
In only a few reported cases have the courts of this State discussed contracts of adhesion. In virtually all the contract has been enforced. (Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516; Levine v Shell Oil Co., 28 NY2d 205; Grineff v Ithaca Coll., 79 Misc 2d 831; Matter of K. D. v Educational Testing Serv., 87 Misc 2d 657; Ciofalo v Vic Tanney Gyms, 10 NY2d 294; but see Weidman v Tomaselli, 81 Misc 2d 328.)
Of course, the principle that signed contracts are binding cannot be lightly disregarded. To do so would endanger the orderly functioning of commerce and allow individuals to escape the consequences of their agreements because of a change in circumstance. However, it is also unrealistic to continue insisting that in a society of mass marketing it is reasonable still to expect individuals unrepresented by counsel, to read each clause of the many standardized contracts used by the various institutions with which we all deal. In *970 certain instances it is certainly appropriate for courts to examine the circumstances under which a contract was signed in order to determine whether (1) there was a genuine opportunity for the signer to have read the clause in dispute; or (2) if he did not read it whether a reasonable person should have expected to find such a clause in the particular instrument he was signing. Where there are negative answers to these questions, a court can then address itself to the fairness of enforcing that clause.
An analysis of the facts of this case convinces this court that there is every reason to relax the rule here and to excuse defendant from performance under the contract.
It is reasonable in this situation for defendant to have seen himself as powerless to do anything other than sign the form. A hospital emergency room is certainly not a place in which any but the strongest can be expected to exercise calm and dispassionate judgment. The law of contracts is not intended to use "superman” as its model. If the reasonable man standard is applied here, defendant’s failure to read the document or to give it more than the most cursory attention is understandable.
It thus becomes vital that a document like the form involved here be clearly labeled and organized so that the signer is made aware of what it entails. Here, the paragraph signed by defendant bore a heading totally unrelated to the sentence on which plaintiff now relies to argue defendant’s financial liability. Defendant would have been entirely justified in concluding from the heading that he was agreeing only to have his union insurance pay for his wife’s hospital bills. This is a far cry from agreeing to assume personal liability (Restatement, Contracts 2d).
Plaintiff hospital is surely no stranger to the trauma and anxiety experienced by those confronted with emergency medical crises. Armed with this knowledge it should have prepared the form it uses to impose liability so that the person being asked to sign it can readily grasp its meaning, even through quick reading. Moreover, plaintiff should not be permitted to enforce a contractual obligation entered into under such tension-laden circumstances, as those defendant described.
This is exactly the type of situation in which a flexible application of the doctrine of inviolability of contract is war *971 ranted to permit appropriate judicial compassion and understanding.
Judgment for defendant.