821 P.2d 204

**Melinda Kay BROEMMER,
Plaintiff–Appellant,**

v.

**Steven R. OTTO, M.D., and Jane Doe
Otto, individually and as husband and
wife; Abortion Services of Phoenix,
Ltd., an Arizona corporation, Defen-
dants–Appellees.**

No. 1 CA–CV 89–249.

Court of Appeals of Arizona,
Division 1, Department C.

May 9, 1991.

Review Granted Dec. 19, 1991.

**544**

Fogel and Lamber by Dennis M. Lamber and Kenneth J. Love, Phoenix, for plaintiff-appellant.

Weyl, Guyer, Macban & Olson by A. Craig Blakey, II and J. Jeff Bouma, Phoenix, for Dr. Steven R. Otto.

Snell & Wilmer by Barry D. Halpern, John C. West, Bob J. McCullough and Robert H. Oberbillig, Phoenix, for Abortion Services of Phoenix, Ltd.

## OPINION

GERBER, Judge.

This appeal involves an arbitration agreement between Melinda Broemmer and Abortion Services of Phoenix, Ltd. (ASP). The primary issue is whether the latter's standardized contract is an adhesion contract meeting the reasonable expectations of the parties. We find that the arbitration agreement is enforceable and conclude that the trial court properly dismissed the lawsuit.

## FACTS

After learning from an Iowa physician that she was pregnant, Broemmer decided to terminate the pregnancy. Her mother located a physician in Phoenix to perform the abortion. ASP indicated it could perform the procedure.

When Broemmer arrived at ASP for her initial appointment, she completed and signed a medical history form, a consent to operation and an agreement to arbitrate. It took her approximately five minutes to complete the three forms, which she now claims she did not recall or understand. After signing the forms, she underwent a cervical dilation and a sonogram. The next morning Steven M. Otto, M.D. performed the abortion.

The arbitration agreement is a single page document which states at the top, "PLEASE READ THIS CONTRACT CAREFULLY AS IT EFFECTS [sic] YOUR LEGAL RIGHTS, AGREEMENT TO AR-BITRATE" in large bold letters. The document contains a paragraph identifying the parties to the contract, with blank spaces for the name of the patient and the date. Following this paragraph are four short paragraphs setting out the consideration and mutuality of the obligation and the terms of the agreement providing:

1. In the event any dispute arises between the Parties as a result of the fees and/or services provided by Doctor the Parties hereby mutually agree that any such dispute shall be settled by binding arbitration in the City of Phoenix in ac-

cordance with the rules then prevailing of the American Arbitration Association (AAA). The Parties further agree that any arbitrators appointed by the AAA shall be licensed medical doctors who specialize in obstetrics/gynecology.

After the procedure, Broemmer filed a medical malpractice claim against Otto and ASP alleging personal injuries as a result of the abortion. ASP, later joined by Otto, filed a motion to dismiss for lack of subject matter jurisdiction, or alternatively, to compel arbitration. The trial court granted the motion to dismiss.

Broemmer then filed a motion for relief from the judgment under Rule 60(c), Arizona Rules of Civil Procedure. She alleged that the court should have compelled arbitration and stayed the proceedings. The trial court denied her motion. Broemmer appeals from the judgment and the denial of her Rule 60 motion.

### ISSUES

Broemmer challenges the trial court's order of dismissal claiming: (1) the arbitration agreement is an adhesion contract falling short of her reasonable expectations; (2) the arbitration agreement is unconscionable; and (3) Otto is not a party to the arbitration agreement. She also contends that the trial court violated A.R.S. § 12–1502 by failing to stay the suit pending arbitration.

### ARBITRATION AGREEMENTS

This state has adopted the Uniform Arbitration Act which provides in A.R.S. § 12–1501:

A written agreement to submit any existing controversy to arbitration or a written provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

■ Arizona courts have expressed broad support for arbitration. *See e.g., U.S. Insulation, Inc. v. Hilro Construction Co.,* 146 Ariz. 250, 258, 705 P.2d 490,

498 (App.1985). Arbitration is a preferred mode of resolution because it is efficient regarding time and finances. *Dusold v. Porta–John Corp.* 167 Ariz. 358, 807 P.2d 526 (App.1990). The mere inclusion of an arbitration clause in a contract does not favor either party. *U.S. Insulation, Inc. v. Hilro Construction Co.,* 146 Ariz. at 255–256, 705 P.2d at 495–96. Doubts are resolved in favor of arbitration. *Payne v. Pennzoil Corp.,* 138 Ariz. 52, 55–56, 672 P.2d 1322, 1325–26 (App.1983).

Therefore, we look to contract law to determine if this arbitration agreement is enforceable.

### ADHESION CONTRACTS

Broemmer contends that she did not knowingly consent to arbitrate any malpractice claim arising from her treatment. She argues that the public policy favoring arbitration cannot displace the need for her voluntary agreement to arbitrate. *See Wheeler v. St. Joseph Hospital,* 63 Cal. App.3d 345, 133 Cal.Rptr. 775 (1976); *Miner v. Walden,* 101 Misc.2d 814, 422 N.Y.S.2d 335 (1979). Although she concedes she signed the written agreement to arbitrate, she argues that it is an unenforceable adhesion contract.

■ Adhesion contracts may be enforced under rules other than ordinary rules of contract law applicable to the standard bargained-for exchange. *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 393, 682 P.2d 388, 398 (1984). In *Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 742 P.2d 277 (1987), the Arizona Supreme Court described an adhesion contract as a form contract with terms not negotiated, difficult to understand, seldom read nor expected to be read. 154 Ariz. at 271, 742 P.2d at 282, quoting *Zuckerman v. Transamerica Ins. Co.,* 133 Ariz. 139, 144, 650 P.2d 441, 446 (1982). The court stated that adhesive terms generally seek to insure that the drafting party will prevail. *Id.*

ASP and Otto argue that this agreement is not an adhesion contract because it lacks the main characteristics of an adhesion con-

tract, namely, lack of notice and terms protecting the drafting party. They contend that Broemmer had a choice because she could have gone to another health care provider to obtain an abortion.[1]

In *Sanchez v. Sirmons*, 121 Misc.2d 249, 467 N.Y.S.2d 757 (1983), relied upon by appellees, the court considered the validity of an agreement to arbitrate contained in a lengthy consent to abortion form. The court refused to enforce the agreement but rejected the contention that it was an adhesion contract:

> The essence of an adhesion contract is that it is offered on a take it or leave it basis to a consumer who has no realistic bargaining strength and cannot obtain the desired services or goods elsewhere without consenting to the identical contract terms. (*K.D. v. Educational Testing Service*, 87 Misc.2d 657, 662, 386 N.Y.S.2d 747). That is not the case here. The petitioner, not confronted with a medical emergency, could have obtained an elective abortion elsewhere at countless other health facilities in the metropolitan area without being compelled to arbitrate any alleged malpractice claim arising from its performance.

121 Misc.2d at 252, 467 N.Y.S.2d at 759.

Not all courts presented with form health care agreements drafted by the caregiver have considered the existence of alternative sources of care a determinative factor. In *Obstetrics and Gynecologists v. Pepper*, 101 Nev. 105, 693 P.2d 1259 (1985), the Nevada Supreme Court found that an arbitration agreement handed to a patient at a medical clinic as a condition for services was an adhesion contract because the patient was not offered a realistic opportunity to bargain for other terms. The opinion does not discuss the patient's options to go to other clinics.

Similarly, other courts have found that a hospital admission form containing an arbitration clause constitutes an adhesion contract because of the patient's inability to choose other providers.[2] *Wheeler v. St. Joseph Hospital*, 63 Cal.App.3d at 356, 133 Cal.Rptr. at 783.

ASP and Otto correctly point out the absence of two characteristics of the classic adhesion contract. The arbitration agreement is not hidden in small print in boilerplate language in a lengthy document. Further, this arbitration provision is not favorable to the drafting party. *See U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. at 255–56, 705 P.2d at 495–96. However, neither *Darner, Gordinier*, nor the authorities which they cite imply that *all* characteristics must be present for a contract to be adhesive.

There is no evidence as to whether ASP would have performed the surgery if Broemmer refused to sign all three papers given her. However, Broemmer's uncontradicted affidavit states that she was given two standardized contracts and a medical history form and told to fill them out prior to meeting with a physician or nurse. She was not told that she was free to reject any of the documents. She merely believed that she had to sign the forms before she could receive medical services.

■ When an individual believes she needs immediate medical attention, she is unlikely to comparison shop for contract terms that relate to potential medical malpractice claims. If a medical entity uses a standardized form which contains an arbitration clause, and offers it to patients on a take it or leave it basis, the clause constitutes a contract of adhesion. Henderson, *Contractual Problems In the Enforcement of Agreements To Arbitrate Medical Malpractice*, 58 Va.L.Rev. 947 (1972).

---

1. For purposes of this analysis only, we assume that this is factually correct. There is nothing in this record to show whether arbitration clauses are generally included in contracts offered by health care providers who perform abortions. If such clauses are required as a condition for obtaining an abortion by all providers in a given locale, there may be no choice for the person seeking these services.

2. This case was decided prior to the adoption of Cal.Civ.Pro.Code § 1295 (West 1982) which establishes requirements for disclosing information in hospital admission forms and other medical consent forms.

ASP's standardized contract thus appears to be an adhesion contract. However, that determination alone does not render it unenforceable.

■ An adhesion contract is enforceable if it meets the reasonable expectations of the adhering party. *Huff v. Bekins Moving & Storage Co.*, 145 Ariz. 496, 498, 702 P.2d 1341, 1343 (App.1985) (quoting *Graham v. Scissor–Tail, Inc.*, 28 Cal.3d 807, 623 P.2d 165, 171 Cal.Rptr. 604 (1981).[3] However, even if the contract provisions are consistent with the reasonable expectations of the party, they are unenforceable if they are oppressive or unconscionable. *Id.*

### REASONABLE EXPECTATIONS

The Restatement (Second) of Contracts § 211 adopted in *Darner* provides that:

(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing....

(3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

Neither § 211 nor *Darner* permits an individual to repudiate a written contract by asserting failure to read it or by claiming that some provisions were unexpected. *See also Rocz v. Drexel Burnham Lambert, Inc.*, 154 Ariz. 462, 743 P.2d 971 (App. 1987). *Darner* also holds the drafter to:

... good faith and terms which are conscionable; it requires drafting of provisions which can be understood if the customer does attempt to check on his rights; it does not give effect to boilerplate terms which are contrary to either the expressed agreement or the purpose of the transaction as known to the contracting parties.

140 Ariz. at 394, 682 P.2d at 400.

The arbitration agreement signed by Broemmer does not contain bizarre or oppressive terms, nor does it undercut the primary purpose of the transaction. The agreement simply provides an arbitration method for resolving disputes. It was given to Broemmer the day prior to surgery as a separate document which highlighted that it should be read and that it would affect her legal rights.

In adopting Restatement § 211 in *Darner*, the court held that such boilerplate terms will be enforced unless the drafter had reason to believe the adhering party would not have assented to the term had she known of its presence. 140 Ariz. at 391–94, 682 P.2d at 396–99. We find nothing in the record from which an inference can be drawn that ASP had reason to know that Broemmer would have rejected the agreement had she known that it provided for arbitration of medical malpractice claims.

### UNCONSCIONABILITY

■ A bargain is "unconscionable" if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Restatement (Second) of Contracts § 208, comment b (1979); quoting *Hume v. United States*, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889); quoting in turn *Earl of Chesterfield v. Janssen*, 2 Ves. Sen. 125, 155, 28 Eng. Rep. 82, 100 (Ch. 1750). Unconscionability involves overreaching. It may involve procedural as well as substantive concerns. *Pacific American Leasing Corp. v. S.P.E. Building Systems, Inc.*, 152 Ariz. 96, 103, 730 P.2d 273, 280 (App.1986). The reason for refusing to enforce unconscionable agreements is to prevent oppression and unfair

---

3. This test is different from the test employed by the Nevada Supreme Court in *Obstetrics and Gynecologists v. Pepper*, relied upon by appellant. The test in that case is that an adhesion contract will be enforced where there is "plain and clear notification of the terms and an understanding consent." 101 Nev. at 108, 693 P.2d at 1261. Arizona has not equated "reasonable expectations" with an "understanding consent" to all contract provisions.

surprise stemming from superior bargaining power. *Restatement (Second) of Contracts* § 208, comment b.

■ Broemmer argues that the particular arbitration terms which she signed are unconscionable because of the costs of arbitration and the selection of a biased arbitrator. She contends that the agreement incorporates the rules of the American Arbitration Association (AAA) which require a minimum fee of $300 and an automatic fee of $750.00 for claims between $25,000 and $50,000, plus 2% of the excess over $25,000. Commercial Rules, Administrative Fee Schedule. Claims between $50,000 and $100,000 obligate the initiating party to forward $1,250 plus 1% of the excess over $50,000. *Id.*

Appellees rely on *A.P. Brown Co. v. Superior Court,* 16 Ariz.App. 38, 490 P.2d 867 (1971). That case held that the parties had incorporated the AAA rules and could not escape them simply by saying that they had not read them. It does not address whether the fees were unconscionable. Therefore, that case is not dispositive on the alleged unconscionability of the AAA fee schedule.

Broemmer states that while her damages are unliquidated the AAA rules obligate her to make a determination of the amount of money that can compensate her for her injuries. She argues that her decision as to this amount may have to depend upon her financial constraints with respect to payment of the administrative fee. She contends that even if she had read the arbitration agreement, she would have been unfairly surprised by later finding out that the administrative fees were so high.

We find that the fee schedule is not oppressive. The arbitration rules also provide that the fee is deferrable, reducible, or apportionable. American Arbitration Association Commercial Rules, Rule 48. Furthermore, the AAA fees are well below the costs of litigating the same claim.

Broemmer next argues that the provision requiring the appointment of an arbitrator in obstetrics/gynecology renders the agreement unconscionable. She contends that such an individual will necessarily favor the defendant doctors. She argues that an agreement to arbitrate should not be enforced where an arbitrator is so closely aligned to one of the parties that the agreement becomes illusory. *See In re Cross & Brown Co.,* 4 A.D.2d 501, 167 N.Y.S.2d 573 (1957); *Graham v. Scissor-Tail, Inc.,* 623 P.2d at 165, 171 Cal.Rptr. at 604.

She argues further that the interests of ASP and Otto are so closely aligned with the interests of all obstetricians that the agreement is illusory.

In support of her position, she relies upon the *dissenting* opinion in *Morris v. Metriyakool,* 418 Mich. 423, 344 N.W.2d 736 (1984). However, the majority opinion addressing the unconscionability issue states:

> Neither physicians nor hospital administrators have professional interests that are adverse to patients or even malpractice claimants on a consistent, daily basis. Any identity of interest with respondents is not so strong as to create a subliminal bias for one side and against the other.

418 Mich. at 437, 344 N.W.2d at 741. Other courts have taken a similar position. Most cases hold that use of health care providers as arbitrators does not reflect any automatic bias against the claimant. *See DiFilippo v. Beck,* 520 F.Supp. 1009 (D.Del.1981); *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 353–54 (Alaska 1988); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978).

Broemmer failed to present any evidence in the trial court concerning the unconscionability of requiring an obstetrician/gynecologist as arbitrator. To the extent the record addresses this issue, we note that the AAA rules provide that a list of proposed arbitrators be submitted to each party. Rules of Amer. Arbitration Association Commercial Rules, Rule 13. Each party may then cross out any objectionable names and indicate a preference from those remaining. *Id.* The rules also require the disclosure of information likely to affect impartiality. American Association Commercial Rules, Rule 19.

In view of these factors, we find no merit in Broemmer's contention that the required appointment of an obstetrician/gynecologist as an arbitrator of her medical malpractice dispute is unconscionable on its face.

### DR. OTTO

Broemmer next contends that Otto is not a party to the arbitration agreement because he is not expressly named in the contract documents.

■ The agreement between the parties consists of two separate documents, the consent to operation and the agreement to arbitrate. The agreements must be read as a whole, with each part read in light of the other parts. *C & T Land and Dev. Co. v. Bushnell,* 106 Ariz. 21, 22, 470 P.2d 102, 103 (1970). The consent to operate does not identify the operating physician by name. The agreement to arbitrate identifies the parties to the agreement as Broemmer and "Robert H. Tamis, M.D., Abortion Services of Phoenix, referred to hereinafter as Doctor, its agents, servants and employees. . . ."

In its answers to interrogatories, ASP denied that Otto was its employee but admitted that it had a contract with Otto to provide services. We find nothing in the briefs on appeal concerning whether this relationship made Otto an agent of ASP. Otto avoided taking a position on his status as an agent in the memoranda filed with the motion to dismiss. ASP and Otto both deny that he was an agent or employee. Otto argues that he is a party to the arbitration agreement by virtue of the following provision:

> 2. This agreement shall be binding not only upon the parties hereto, but also as appropriate *their* respective heirs, devisees, personal representatives, guardians or *any person deriving any claim through or on behalf of them.* (Emphasis added.)

He contends that he is covered by this clause because he is a person who could derive a claim through *them,* meaning through the parties to the contract. He

asserts that his legal status is derived through ASP. Broemmer contends that the word *them* refers to "heirs, devisees, personal representatives or guardians" and that the phrase limits the beneficiaries of the contract to successors in interest of those four identified groups. She argues that this phrase, ambiguous in her view, should have been construed in her favor.

■ The interpretation of a contract must be made anew in this court independently of the trial court's findings. *Stika v. Albion,* 150 Ariz. 521, 523, 724 P.2d 607, 609 (App.1986). Whether a contract is ambiguous is initially a question of law for the court to decide. *Autonumerics, Inc. v. Bayer Industries,* 144 Ariz. 181, 186, 696 P.2d 1330, 1335 (App.1985). The fact that the parties to an agreement disagree over its meaning does not establish its ambiguity. *Id.*

■ The above-quoted provision is not ambiguous. The word *their* clearly refers to "the parties." It precedes a list of categories of parties to be bound. Each group is separated by commas and the conjunction *or* precedes the final grouping "any person deriving any claim through or on behalf of *them.*" The parallel use of the word *them* grammatically refers back to the subject to which the entire list relates, i.e., "the parties." The quoted provision makes the agreement binding on persons who derive their claims from one of the parties to the agreement.

The consent to operation document gives ASP the right to designate a physician to perform the termination procedure. The agreement to arbitrate renders a dispute over services subject to arbitration. The most plausible interpretation of these provisions is that disputes over services provided by ASP through the designated physician are subject to arbitration. We conclude that this dispute over the adequacy of the services provided by Otto is covered by the agreement to arbitrate.

### RULE 60 RELIEF

The parties stipulated to the form of judgment which dismissed the complaint.

**550**

The judgment did not order arbitration proceedings or stay the superior court proceedings pending arbitration. Almost one month after judgment was entered, Broemmer filed a Rule 60 motion to set aside the judgment on grounds that it violated A.R.S. § 12–1502. The motion did not identify any grounds in Rule 60, Arizona Rules of Civil Procedure.

 On appeal Broemmer asserts that Rule 60(a), which permits correction of judgments for clerical mistakes, entitles her to relief. Her position is inconsistent with the substantive nature of her argument both in the trial court and on appeal. Her motion and briefs argue that the trial court made an error of law. Her argument should have been raised within fifteen days from entry of judgment in a motion for reconsideration under Rule 59, Arizona Rules of Civil Procedure. *See Anderson v. Hawkins*, 129 Ariz. 83, 628 P.2d 966 (App. 1981).

 Even if we could consider the motion under Rule 60(a), Broemmer has failed to present any evidence that the judgment was the result of a clerical mistake or that it arose from oversight, omission or error. Failure to assert a substantive legal argument is not synonymous with clerical mistake or error. *See Fernandez v. Garza*, 88 Ariz. 214, 221–22, 354 P.2d 260, 265 (1960); *Ace Automotive Products, Inc. v. Van Duyne*, 156 Ariz. 140, 750 P.2d 898 (App.1987). Further, we find no merit to the argument that the judgment violates A.R.S. § 12–1502(D), which provides:

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefore has been made under the section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

The statute requires a stay order *only* if the court has ordered arbitration or an application has been made for arbitration. Broemmer did not request arbitration. ASP and Otto requested arbitration only as an alternative to dismissal. The judgment granted dismissal and did not order arbitration. Broemmer stipulated to the form of that judgment. The court's refusal to set aside the judgment did not violate A.R.S. § 12–1502(D). This result does not preclude Broemmer from pursuing arbitration as provided in the agreement.

## CONCLUSION

Although the agreement to arbitrate was part of an adhesion contract, we find that it does not fall outside Broemmer's reasonable expectations nor is it unconscionable. The trial court did not abuse its discretion in refusing to set aside the judgment. We affirm the judgment of the trial court. Each party is to bear its own fees.

SHELLEY, P.J., and BROOKS, J., concur.