877 P.2d 1345

PHOENIX BAPTIST HOSPITAL & MEDICAL CENTER, INC., an Arizona corporation, Plaintiff–Appellee,

v.

Thomas F. AIKEN and Patricia J. Aiken, also known as Patsy J. Wilson, husband and wife, Defendants–Appellants.

No. 1 CA–CV 91–0657.

Court of Appeals of Arizona, Division 1, Department B.

July 26, 1994.

Gammage & Burnham by Kevin J. Blakley, Lisa A. Neuville, Phoenix, for plaintiff-appellee.

Law Offices of Richard H. Lee by Richard H. Lee, Phoenix, for defendants-appellants.

WEISBERG, Judge.

## OPINION

Thomas and Patricia Aiken ("defendants") appeal from the portion of the trial court's judgment finding that Thomas' separate property is liable for health care expenses incurred by his wife because of an agreement he signed. For the reasons stated below, we reverse this portion of the judgment and remand for trial on this issue.

## FACTS AND PROCEDURAL HISTORY

Patricia was hospitalized at Phoenix Baptist Hospital and Medical Center, Inc. ("the hospital"). When the hospital did not receive payment of its bill, it filed suit seeking judgment not only against Patricia, personally, and against the marital community, but also against Thomas, personally, because of an alleged agreement on his part to pay the charges.

The hospital filed a motion for summary judgment relying on certain documents it purported to attach to the motion as Exhibits A and B. The hospital also submitted the affidavit of its Vice–President of Finance, Larry Haggerty, explaining that Exhibit A was the agreement in which defendants agreed to pay ordinary charges for hospitalization and medical care, and that Exhibit B was an agreement to pay finance charges on all outstanding charges.

In response, defendants asserted that the hospital had produced nothing showing that Thomas had agreed to pay the underlying medical charges because Exhibit A did not contain his signature. Exhibit B, they continued, which appeared to show his signature, merely pertained to the payment of interest on certain outpatient services.

In reply, the hospital's counsel indicated that the second page of Exhibit A, which included the financial agreement with Thomas' apparent signature, had inadvertently been left off. He indicated that a complete copy of Exhibit A was being attached to the reply.

The missing page, which was attached to the reply, contained boiler-plate provisions including one entitled "Financial Agreement." It provided in relevant part:

The undersigned *agrees* (whether signing as agent, representative, or as patient, and whether or not insured or a member of a health maintenance organization) that, in consideration of the services to be rendered to the patient, he or she is hereby individually obligated to pay the account of the hospital in accordance with the regular rates and terms of the hospital unless otherwise agreed in writing by the hospital corporation.

Should the hospital account be referred for collection, the undersigned *agrees* to pay reasonable collection expenses, counsel fees, and court costs ...

The page contained the signature of "Thomas F. Aiken" on a blank line that appeared above wording describing the signer as a "[p]erson authorized to sign for patient."

In its reply, the hospital also raised a new argument that a spouse is legally responsible for the necessary medical expenses incurred by the other spouse, even in the absence of any written agreement, pursuant to Ariz.Rev. Stat.Ann. ("A.R.S.") section 13–3611. After hearing oral argument on the motion for summary judgment, the trial court asked for supplemental memoranda on this newly-raised issue of statutory liability.

The trial court ultimately determined that, as a matter of law, the community property of defendants and the separate property of each of them were liable for Patricia's reasonable medical bills. It found that Thomas' separate property was liable because of the agreement he had signed, but rejected the hospital's contention that Thomas' separate property was liable pursuant to A.R.S. section 13–3611. The trial court, however, held that the reasonableness of the hospital's charges could not be determined on summary judgment. It therefore set that issue for trial.

Notwithstanding, the parties later stipulated to allow judgment to be entered against defendants' marital community, and against each of them, separately, for the amount alleged by the hospital. The stipulation ex-

pressly reserved defendants' right to contest Thomas' separate liability.

After the stipulated judgment was entered, defendants filed a motion to reconsider that issue pursuant to Rule 59 of the Arizona Rules of Civil Procedure. Accompanying the motion to reconsider were their affidavits in which they testified to the following facts:

On November 1, 1989, Patricia suffered a heart attack that prompted a 911 call for emergency assistance. Despite their request that she be taken to Maricopa County Medical Center because of her lack of funds to pay for medical treatment, Patricia was taken to Phoenix Baptist Hospital. Thomas was present at the hospital emergency room when his wife was admitted. He was so upset over his wife's condition that he could not recall signing the documents referred to in the Larry Haggerty affidavit as Exhibits A and B. In any event, he did not read the documents and could not have read them without his reading glasses, which he did not have with him that day. Also, no one explained the documents to Thomas and, even if someone had explained them to him, he would have been too upset to understand the implications of signing them.

In their motion to reconsider, defendants pointed out that they had not previously provided their affidavit testimony because, until two days before oral argument, they had not been presented with proof that Thomas had signed a financial agreement. They further asserted that they had not addressed these matters in their supplemental memorandum because the trial court had directed briefing only on the A.R.S. section 13–3611 issue.

The trial court denied defendants' motion to reconsider. This appeal concerning the liability of Thomas' separate property followed.

## DISCUSSION

### A. Sufficiency of the Attached Documents

■ Defendants first argue that the hospital was not entitled to summary judgment because it failed to establish by admissible evidence that Thomas had signed the agreement to pay his wife's medical expenses.

They assert that the affidavit of Larry Haggerty was without sufficient foundation because Haggerty did not personally witness Thomas' signature. They also object to the fact that no affidavit accompanied the hospital's reply which included the previously omitted page of the agreement, purportedly bearing Thomas' signature.

■ Summary judgment is appropriate when the record shows there is no real dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The party seeking judgment has the burden of satisfying this standard and demonstrating both the absence of any factual conflict and his or her right to judgment. *United Bank v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990). We review the grant of summary judgment on the basis of the record made in the trial court, but determine whether the entry of judgment was proper *de novo. Id.* In this case, the trial court properly concluded that the financial agreement was admissible evidence.

The hospital employee avowed that the document was a business record kept in his care at the hospital. Even though he did not witness the actual signing of the document, defendants produced no evidence giving rise to the contrary inference that Thomas' signature had been forged. We therefore find no abuse of discretion by the trial court in concluding that the document had sufficient foundation to allow it to be considered.

We next note that there is no indication the hospital was trying to improperly add something in its reply that had not been covered under its previous supporting affidavit. The hospital's counsel explained that a clerical error in copying the affidavit had occurred and that he was merely supplying the missing page. The attorney signed the reply in compliance with Rule 11, Arizona Rules of Civil Procedure. We find this sufficient to correct this sort of error.

### B. Enforceability of the Agreement

The defendants argue that the financial agreement, even if signed by Thomas, is

unenforceable because it is a contract of adhesion obtained under circumstances that would make its enforcement unreasonable. We agree and therefore hold that defendants are entitled to trial on the issue of whether its enforcement would be unreasonable.

The Arizona Supreme Court has stated that an adhesion contract "is typically a standardized form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Broemmer v. Abortion Servs., Ltd.*, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992) (quoting *Wheeler v. St. Joseph Hosp.*, 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (1976)). The court also stated that reaching the conclusion that a contract is one of adhesion does not, of itself, determine its enforceability. Rather, to determine its enforceability, it is necessary to look to two factors: the reasonable expectations of the adhering party and whether the contract is unconscionable. *Abortion Servs.*, 173 Ariz. at 151, 840 P.2d at 1016.

Under the *Abortion Services* definition, the agreement Thomas signed was undeniably a contract of adhesion. He was required to sign a preprinted form without any chance to negotiate its terms. We must therefore apply the two *Abortion Services* factors to determine whether the contract is enforceable. Also, we will view the evidence in the light most favorable to the party opposing the motion for summary judgment and draw all inferences fairly arising from the evidence in that party's favor. *Johnson ex rel. Johnson v. Svidergol*, 157 Ariz. 333, 335, 757 P.2d 609, 611 (App.1988).

### 1. Reasonable Expectations

"Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation." *Abortion Servs.*, 173 Ariz. at 152, 840 P.2d at 1017 (quoting Restatement (Second) of Contracts § 211(3) cmt. f, *approved in, Darner Motor*

*Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 391, 682 P.2d 388, 396 (1984)). We must consider, then, whether it was beyond Thomas' reasonable expectation to have liability imposed upon his separate property.

Viewed in the light most favorable to defendants, the evidence supports the proposition that Thomas signed the agreement under extremely stressful circumstances without having had the terms of the agreement explained to him. The place where he affixed his signature indicated merely that he was the "[p]erson authorized to sign for the patient," but did not call attention to the fact that he was making himself personally liable by signing. Furthermore, defendants' affidavits both indicate that they had insufficient funds to pay for medical care and that they informed the hospital staff of this fact. Such testimony is evidence that Thomas would not have assented to the agreement if he had known that he was attaching liability to his separate property. We therefore conclude that this evidence creates a material issue of fact as to Thomas' reasonable expectation.

### 2. Unconscionability

"A bargain is 'unconscionable' if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Broemmer v. Otto*, 169 Ariz. 543, 547, 821 P.2d 204, 208 (App.1991), *vacated in part on other grounds*, 173 Ariz. at 153, 840 P.2d at 1018 (quoting Restatement (Second) of Contracts § 208, cmt. b (1979)). "Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e. the contract terms per se." *Pacific Am. Leasing Corp. v. S.P.E. Bldg. Sys.*, 152 Ariz. 96, 103, 730 P.2d 273, 280 (App. 1986).

In this case, Thomas hurriedly signed the preprinted agreement in order to obtain emergency medical care for Patricia. No hospital representative ever explained the form agreement to him, and the agreement lacked any large print which might have

called his attention to the provision regarding the signer's personal liability.

Given these circumstances, the trier of fact could conclude either that Thomas did not understand the implications of the agreement, or that he felt he had no choice but to immediately sign the preprinted form. Dealing with a similar scenario, a New York court reasoned:

> Plaintiff hospital is surely no stranger to the trauma and anxiety experienced by those confronted with emergency medical crises. Armed with this knowledge, it should have prepared the form it uses to impose liability so that the person being asked to sign it can readily grasp its meaning, even through a quick reading. Moreover, plaintiff should not be permitted to enforce a contractual obligation entered into under such tension-laden circumstances, as those defendant described.
>
> This is exactly the type of situation in which a flexible application of the doctrine of inviolability of contract is warranted to permit appropriate judicial compassion and understanding.

*St. John's Episcopal Hosp. v. McAdoo,* 94 Misc.2d 967, 405 N.Y.S.2d 935, 937 (N.Y.Civ. Ct.1978).

Accordingly, the evidence presented in the instant case creates a material issue of fact as to the unconscionability of the procedure used to obtain the agreement.

### C. Application of A.R.S. Section 13–3611

■ We next consider the cross-issue raised by the hospital. The hospital argues that the trial court's summary judgment ruling should be upheld because, under A.R.S. section 13–3611, the separate property of a spouse is liable for the necessary medical care of the other spouse.

■ To consider this argument, we start with the premise acknowledged by all parties that the provision of medical care to Patricia was a community obligation. The necessary medical care of a spouse would normally be "intended to benefit the community," which is the test of whether an obligation is a community debt. *See Donato v. Fishburn,* 90 Ariz. 210, 367 P.2d 245 (1961).

■ Next, A.R.S. section 25–215(D) provides that a community obligation shall be satisfied first from community property and second from the separate property of the spouse contracting the debt or obligation. A community obligation is not to be satisfied from property of the spouse who did not contract the debt or obligation. *See Fox v. Weissbach,* 76 Ariz. 91, 93, 259 P.2d 258, 259 (1953).

Notwithstanding, the hospital points out that the Arizona Legislature has also enacted A.R.S. section 13–364 that imposes criminal liability upon a spouse who willfully fails to provide necessary medical care for the other spouse. A.R.S. section 13–3611 provides:

> A married person, having sufficient ability to provide for his or her spouse's support or who is able to earn the means of such spouse's support, who knowingly fails or refuses to provide the spouse with necessary food, clothing, shelter or medical attendance, unless by such spouse's misconduct he or she was justified in so doing, is guilty of a class 6 felony.

The hospital argues that, because of this criminal statute, a spouse's separate property is liable for the cost of necessary medical care provided to the other spouse. We do not agree.

■ The general rule is that "no private cause of action should be inferred based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action by a member of that group." *Ward v. Fireman's Fund Ins. Cos.,* 152 Ariz. 211, 216, 731 P.2d 106, 111 (App. 1986), *overruled in part on other grounds, Transamerica Fin. Corp. v. Superior Ct.* 158 Ariz. 115, 117 n. 1, 761 P.2d 1019, 1021 n. 1 (1988). Nonetheless, the hospital cites cases from four other community property states in which courts have ruled that a spouse's separate property is liable for the costs of necessities for the other spouse. *See e.g., Swogger v. Sunrise Hosp., Inc.,* 88 Nev. 300, 496 P.2d 751 (1972); *Credit Bureau v. Terranova,* 15 Cal.App.3d 854, 93 Cal.Rptr. 538 (1971); *Finney v. State,* 308 S.W.2d 142 (Tex. App.1957); *In re DeNisson's Guardianship,*

197 Wash. 265, 84 P.2d 1024 (1938). In each of these states, though, there was a civil statute that determined the outcome of each case.

In *Swogger*, the Nevada Supreme Court observed that a statute provided that "the wife must support the husband out of her separate property when he has no separate property and they have no community property and he, from infirmity, is not able or competent to support himself." 496 P.2d at 752.

In *DeNisson*, the statute being considered by the Washington Supreme Court expressly provided that "[t]he expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately." 84 P.2d at 1026.

In *Terranova*, the California court found that the California Civil Code expressly made certain separate property of a spouse liable for the payment of debts contracted by the other spouse for necessities of life. 93 Cal. Rptr. at 540.

Finally, in *Finney*, the Texas court concluded that a Texas civil statute, making a spouse liable for hospital expenses incurred by the other spouse, allowed a creditor to reach the separate property of such spouse. The court reached this conclusion after finding that another statutory provision enacted at the same time expressly provided that all laws and portions of laws in conflict with the statutory provision being enacted were expressly repealed. 308 S.W.2d at 142. Thus, any Texas statute protecting separate property was repealed to the extent it conflicted with the separate liability statute.

The hospital has not cited, and we have not found, any similar Arizona civil statute. We, therefore, cannot conclude that the Arizona Legislature, by its enactment of A.R.S. section 13–3611, intended that a spouse's separate property be liable for the medical expenses incurred by the other spouse.

## CONCLUSION

For the foregoing reasons, we hold that there are material issues of fact existing as to the enforceability of the agreement against Thomas' separate property. We, therefore, reverse the trial court's judgment and remand that issue for trial.

TOCI and CONTRERAS, JJ., concur.