156 P.3d 1157

Ronald and Tonya BROOKOVER, husband and wife, Plaintiffs/Appellants,

v.

ROBERTS ENTERPRISES, INC., an Arizona corporation, Defendant/Appellee.

No. 1CA–CV 05–0444.

Court of Appeals of Arizona, Division 1, Department E.

May 8, 2007.

**54**

Warnock, MacKinlay & Associates, P.L.L.C. By Brian R. Warnock, Krista M. Carman, Phoenix, Attorneys for Appellants.

Kunz Plitt Hyland Demlong & Kleifield By Timothy R. Hyland, Elliot H. Wernick, Julie R. Barton, Phoenix, Attorneys for Appellee.

**OPINION**

THOMPSON, Judge.

¶ 1 Plaintiffs-appellants Ronald and Tonya Brookover appeal the trial court's decision granting summary judgment to defendant-appellee Roberts Enterprises, Inc. (Roberts). The Brookovers claimed that Roberts was negligent in allowing its cow to enter the highway where it collided with the Brookovers' automobile. On appeal, they contend that fact issues exist regarding Roberts's negligence and that the doctrine of res ipsa loquitur applies. For the following reasons, we affirm the trial court's grant of summary judgment.

**FACTUAL AND PROCEDURAL HISTORY**

¶ 2 We view the facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). On September 16, 2003, the Brookovers were driving from Phoenix to their home in Salome, Arizona. Ronald Brookover (Brookover) was driving and Tonya Brookover was seated in the right front passenger seat. They exited Interstate 10 onto the Salome Highway, which is a two-lane paved road with one lane of traffic in each direction. The Salome Highway runs through open range land. The Brookovers were traveling approximately fifty-five miles per hour when Brookover became aware of a cow approximately one hundred to one hundred and fifty feet ahead and to the left of him. He began to brake and move to the right edge of the road to go around the cow. He then saw a second cow approximately three to four feet from the right front of his vehicle and struck that cow with the right front of the vehicle. The collision caused the vehicle to roll and land on its roof.

¶ 3 At the location where the accident occurred, the Salome Highway runs through property known as the Clem Allotment, which at the time was leased by Roberts for grazing purposes. Roberts leased the property in July 2003, and first put cattle on it in August. Roberts did not construct any fence along the Salome Highway. This accident was the first reported incident involving an animal and a motor vehicle since Roberts occupied the leased premises. Brookover was aware of the presence of cattle along the Salome Highway, but had never before seen cattle on the Clem Allotment.

¶ 4 The Brookovers filed a claim of negligence against Roberts in February 2004. The Second Amended Complaint alleged that

Roberts was the owner of livestock that was allowed to negligently enter onto the Salome Highway and was struck by the Brookovers' vehicle, and that Roberts knew of the propensity of its livestock to enter onto the highway and was negligent in not taking any steps to protect the public from its cattle on the highway. The Second Amended Complaint also alleged that the presence of cattle on the roadway was under the control of the defendants, that the Brookovers were unaware of the circumstances that caused the cattle to be on the roadway, and that they therefore relied on the doctrine of res ipsa loquitur.

¶ 5 Roberts moved for summary judgment, arguing that, as a matter of law, under *Carrow Co. v. Lusby*, 167 Ariz. 18, 804 P.2d 747 (1990), it could not be found negligent for merely failing to prevent its cattle from entering the highway. Roberts also argued that the Brookovers could not demonstrate that the accident was of a kind that ordinarily does not occur in the absence of negligence, one of the requirements to apply the doctrine of res ipsa loquitur.

¶ 6 In their response, the Brookovers argued that the facts of each case had to be considered to determine if the accident was the result of the mere failure to prevent cattle on the highway and therefore within the standard of care outlined in *Carrow*. The Brookovers argued that Roberts was aware through its ranching experience that having an unfenced, paved, high-speed highway traversing grazing land would result in more collisions between automobiles and cows than would be the case where the road was dirt and unimproved. They contended that Roberts had complained to authorities on other occasions but took no such steps with regard to the Clem Allotment. The Brookovers also asserted that Roberts's decision to graze cattle on an unprotected lease and its failure to erect fencing at known crossing points, to post warning signs, or to advise authorities of the presence of cattle constituted issues requiring a jury determination of reasonableness.

¶ 7 The trial court granted Roberts's motion for summary judgment, finding that the Brookovers' claim was, in essence, that Roberts had not prevented its cattle from entering the highway, which did not fall below the standard of care as articulated in *Carrow*. The Brookovers moved for reconsideration. The trial court denied the motion without requesting a response from Roberts and entered judgment in favor of Roberts. The Brookovers timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B)(2003).

## DISCUSSION

¶ 8 Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and the inferences drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince*, 185 Ariz. at 45, 912 P.2d at 49. We review the decision on the record made in the trial court, considering only the evidence presented to the trial court when it addressed the motion. *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App.1994); *GM Dev. Corp. v. Cmty. Am. Mortgage Corp.*, 165 Ariz. 1, 4, 795 P.2d 827, 830 (App.1990).

¶ 9 To establish a claim for negligence, a plaintiff must prove the existence of a duty of the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Boyle v. City of Phoenix*, 115 Ariz. 106, 107, 563 P.2d 905, 906 (1977). The standard of care owed by a livestock owner in Arizona was defined in *Carrow Co. v. Lusby*, 167 Ariz. 18, 24, 804

P.2d 747, 753 (1990). In Arizona, "an owner of livestock owes a duty of ordinary care to motorists traveling on a public highway in open range." *Id.* at 24, 804 P.2d at 753. The standard is one of reasonable conduct in light of the apparent risk. *Id.* However, "in open range territory, the mere failure to prevent one's cattle from entering the highway, by erecting fences or otherwise, does not constitute conduct falling below the standard of care required of livestock owners." *Id.* at 25, 804 P.2d at 754. To establish a breach of duty by a livestock owner in open range territory, a plaintiff must point to specific acts or omissions by the defendant that caused the damages. *Id. Carrow* does not provide further guidance as to what types of acts or omissions might establish a breach of standard of care.

¶ 10 On appeal, the Brookovers argue that they presented sufficient evidence to raise a question of fact as to whether Roberts breached a standard of ordinary care other than by merely failing to prevent its cattle from entering the highway. The Brookovers presented evidence that Roberts—through Marvin Roberts, one of two shareholders of Roberts Enterprises, Inc., and Norman Patrick Lauderdale, the ranch foreman for Roberts Enterprises, Inc.—was aware of the risk of significant numbers of collisions between cattle and automobiles when cows were allowed to graze in the vicinity of a paved highway. Marvin Roberts had approximately thirty years and Lauderdale approximately fifty years of experience in the cattle business. Each testified in deposition to an increased number of collisions between automobiles and cattle when a road passing through a grazing area is paved. Marvin Roberts testified that, with regard to three other ranches he had previously leased or owned, he noted a definite increase in cattle-automobile collisions after the road was paved. In one case he expressed the wish that the county had fenced the road to protect his cattle and motorists on the highway.

¶ 11 Roberts argues that its knowledge and experience regarding other ranches is irrelevant because none of it relates to any accidents on the Salome Highway through the Clem Allotment. Roberts also argues that the Brookovers have not demonstrated sufficient similarities between the specific conditions and locations under which the prior collisions at other ranches occurred and the conditions under which the Brookover accident occurred.

¶ 12 For purposes of showing notice of a dangerous condition, evidence of prior incidents must be shown to have occurred under conditions similar to the conditions of the incident at issue. *Burgbacher v. Mellor,* 112 Ariz. 481, 483, 543 P.2d 1110, 1112 (1975). Conditions, however, need be similar only in general character and not precisely the same. *Id.* (citation omitted).

¶ 13 Here, the record indicates that the accident involving the Brookovers was the first reported cattle-automobile accident to occur on the Salome Highway through the Clem Allotment since Roberts began to lease the premises. In addition, the record contains no evidence that Roberts was aware of any personal injuries resulting from collisions between motorists and cattle on the Salome Highway across the Clem Allotment. From this evidence, a jury could not find that Roberts had notice of any specific dangerous condition created by its cattle at any particular point on the highway.

¶ 14 The Brookovers assert that Roberts could have breached the standard of care by not posting signs warning of cattle on the road along the Salome Highway. Roberts contends that Arizona law expressly prohibits Roberts from erecting such a sign. Arizona Revised Statutes (A.R.S.) section 28–648 (2003) states, in part:

A. A person shall not place, maintain or display on or in view of a highway an unauthorized sign, signal, marking or device that either:

1. Purports to be or is an imitation of or resembles an official traffic control device or railroad sign or signal.

2. Attempts to direct the movement of traffic.

¶ 15 Even if Roberts was not prohibited by A.R.S. § 28–648 from erecting warning signs, the Brookovers cannot show that the lack of

warning signs proximately caused the accident. Brookover testified in deposition that, prior to the accident, he had driven the Salome Highway four to five times a month. He had sometimes seen cattle during these drives and sometimes seen cows on the highway. He testified, however, that, since 1995, he had not seen any cattle on the section where the accident occurred and had seen no cattle on the highway from where the Salome Highway begins at the exit of Interstate 10 to three to four miles beyond the location of the accident. He explained that he had seen cattle on the Salome Highway only north of the CAP canal, which other testimony indicated was about ten miles to the north. He further explained that he had seen cattle only between two specific cattle guards. He did not understand the term open range land but he did understand that signs with cows on them meant that cows may be present. He stated that he had seen such signs, but did not say where he had seen them.

¶ 16 Thus, the Brookovers had notice and warning that cows could be present on the Salome Highway and further notice would have made no difference. Furthermore, the record presented to the trial court contained no testimony from Brookover that he would have behaved differently had he seen warning signs on the road.[1]

¶ 17 The Brookovers have also pointed to the presence of water tanks near the Salome Highway as a basis for finding that Roberts had breached the duty of ordinary care.[2] Roberts's counsel conceded at oral argument in the trial court that the duty of care might require that Roberts not place water tanks or a salt lick adjacent to the highway.

¶ 18 Marvin Roberts testified that cows will wander two to five miles from their water source. The evidence further showed that Roberts had a water tank about one mile southwest of Salome Highway that was filled by pumping from the Harquahala Canal. However, Roberts did not use the tank because a nearby dirt reservoir provided sufficient surface water. Roberts did not pump water to the dirt reservoir. The trial court concluded that the Brookovers did not present evidence that Roberts was responsible for placing water near the highway, thereby causing cattle to be present on the road. We find no error.

¶ 19 The Brookovers also argue that the court erred in concluding that the doctrine of res ipsa loquitur was not applicable. Res ipsa loquitur is "a rule of circumstantial evidence where the trier of fact is permitted ... to draw an inference of negligence from the happening of an accident of a kind which experience has shown does not normally occur if due care is exercised." *McWain v. Tucson Gen. Hosp.*, 137 Ariz. 356, 359, 670 P.2d 1180, 1183 (App.1983) (citing *O'Donnell v. Maves*, 103 Ariz. 28, 436 P.2d 577 (1968)). For res ipsa loquitur to be applicable, a plaintiff must show that the accident is of a kind that ordinarily does not occur in the absence of negligence, that the accident was caused by an agency or instru-

---

1. A declaration by Brookover containing a statement to that effect was submitted to the court with the Brookovers' motion to reconsider. This court, however, may not consider evidence not before the trial court when it considered its ruling. *Cella Barr Assocs., Inc. v. Cohen*, 177 Ariz. 480, 487 n. 1, 868 P.2d 1063, 1070 n. 1 (App. 1994) (when reviewing trial court's decision on a motion to dismiss, court of appeals considers only evidence presented to the trial court in considering the motion; it does not consider evidence provided in a subsequent motion for reconsideration); *GM Dev. Corp.*, 165 Ariz. at 4, 795 P.2d at 830 (in reviewing summary judgment, court of appeals would not consider deposition transcripts filed by order of superior court after the court had entered its ruling, where transcripts were not before court when it considered the motion).

2. The Brookovers first presented written argument on this theory in their motion to reconsider. Roberts correctly argues that this court may not consider new arguments or evidence presented in a motion for reconsideration in reviewing a trial court's ruling. *See Cella Barr*, 177 Ariz. at 487 n. 1, 868 P.2d at 1070 n. 1. The Brookovers, however, argued about the placement of the water tanks at oral argument on the motion for summary judgment. We conclude that the issue of the location of the water tanks was presented to the trial court when it considered the motion for summary judgment and therefore may be considered on appeal. In considering this argument, however, we do not rely on argument or evidence presented as part of the motion to reconsider.

58

mentality subject to the control of the defendant, and that the plaintiff is not in a position to show the circumstances that caused the agency or instrumentality to operate to its injury. *Lowrey v. Montgomery Kone, Inc.,* 202 Ariz. 190, 192, ¶ 7, 42 P.3d 621, 623 (App.2002). Roberts argued and the trial court found that the Brookovers could not establish the first element—that the accident was of a type that ordinarily does not occur absent negligence.

¶ 20 Establishing the first element requires a weighing of the probabilities as to the cause of certain events. *Tucson Gas & Elec. Co. v. Larsen,* 19 Ariz.App. 266, 267, 506 P.2d 657, 658 (1973). The first element is met "if the probabilities weigh heavily in favor of the event having been negligently caused." *Id.* That an accident is of a kind that ordinarily does not occur absent negligence can be established through common knowledge or expert testimony. *Ward v. Mount Calvary Lutheran Church,* 178 Ariz. 350, 355, 873 P.2d 688, 693 (App. 1994).

¶ 21 We affirm the trial court's ruling on the inapplicability of res ipsa loquitur based on the Brookovers' inability to establish that the accident is of a type that would not have occurred in the absence of negligence. The Brookovers did not show that a collision between an automobile and a cow on a highway through open range territory is a type of accident that would not occur absent negligence by the cow owner. The Brookovers presented no expert testimony to that effect nor can we say that common knowledge supports their contention.

¶ 22 Arizona law recognizes that the failure to prevent cattle from wandering onto a highway in open range territory is not in itself negligent. *Carrow,* 167 Ariz. at 25, 804 P.2d at 754. In addition, applying res ipsa loquitur to permit an inference of negligence from a cow's presence on the highway would conflict with the requirement in *Carrow* that a plaintiff, to establish negligence, point to specific acts or omissions other than the failure to keep cattle off the road. *Id.*

## CONCLUSION

¶ 23 The trial court properly granted summary judgment. Accordingly, we affirm.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and PHILIP HALL, Judge.