Arnold G. Fraiman, J.
This is a motion to dismiss the complaint, pursuant to CPLR 3211 (subd [a], pars 1, 7; subd [c]) on the grounds that there is a defense founded upon documentary evidence and that the complaint fails to state a cause of action.
Plaintiff is a 37-year-old college graduate, having entered college at the age of 32. Seeking to attend law school, he took the Law School Admission Test (LSAT) twice within a four-month period in 1973-1974. Defendant is a nonprofit corporation engaged in the business of preparing and administering various well-known educational tests, including the LSAT, for use by colleges and graduate schools throughout the nation. It has administered the LSAT since 1954. The LSAT is an objective test designed to measure general aptitude for the study of law of candidates seeking admission to law school. It consists of approximately 130 so-called multiple choice questions and it also has a section of about 70 questions of a similar nature designed to test writing ability. Defendant administers the LSAT for the Law School Admissions Council (LSAC), a nonprofit membership association of graduate schools of law. The LSAC sets policy for administration of the examinations and the reporting of scores.
Test scores play an important role in determining whether a candidate will be admitted to law school. To insure that they accurately reflect the candidate’s own effort, the administration of - the tests is carefully monitored, and after they are scored, individual scores are checked by computer against any previous scores by the same candidate. Where an increase of more than 150 points (out of a total of 800) is found, defendant *659 conducts an investigation before the candidate’s score is reported to the law schools.
Each candidate who applies to take the LSAT is sent a booklet entitled "Law School Admissions Bulletin” and a registration form. Upon receipt of the completed form, defendant sends the candidate an admission card to take the examination on a specified date at a designated testing center. The registration form requires the applicant to write out in longhand the following statement and to sign it: "I accept the conditions set forth in the Bulletin concerning the administration of the test and the reporting of information to law schools.” Plaintiff took the examination in December, 1973 and again in April, 1974. Before each examination, he was sent a copy of the bulletin and completed in his own handwriting the statement above on his registration forms. The bulletins received by plaintiff each contained the following language under the heading "Scores Cancelled by ETS”:
"We are concerned with reporting only valid scores. On rare occasions, misconduct * * * or circumstances beyond the candidate’s control * * * may render scores invalid. If doubts are raised about your score because of these or other circumstances, we will expect you to cooperate in our investigation. We reserve the right to cancel any test score if, in our sole opinion, there is adequate reason to question its validity. Before exercising this right, we will offer you an opportunity to take the test again at no additional fee.
"If we cancel a score, we will notify the law schools that received, or were to receive, the scores as well as the schools receiving subsequent reports.”
On his December, 1973 examination plaintiff received a score of 399 on the LSAT portion and 26 on the writing ability portion. His April, 1974 LSAT score was 637, or 238 points higher, and his writing ability score was 62. The 238-point discrepancy between the two LSAT scores prompted an investigation by defendant which disclosed striking similarities between plaintiff’s answers and the answers of one "KL,” the candidate seated adjacent to plaintiff. Plaintiff answered 39 of the 130 multiple choice questions on the LSAT portion of the test incorrectly. Of these, 27 were the same incorrect answers as those selected by KL. The significance of this correlation is made evident from an analysis by defendant of the answer sheets of 10 other candidates taking the same LSAT who obtained scores in the same range as plaintiff and KL. Com *660 paring their incorrect answers with plaintiffs, discloses that, on average, there were only seven incorrect responses identical to plaintiffs. Of the 10 other answer sheets analyzed, the most incorrect responses on any one answer sheet which were identical to those of plaintiff was 11. A comparison and analysis of plaintiffs writing ability answer sheet with KL’s and the 10 other candidates disclosed a similar result.*
On the basis of the foregoing, defendant wrote to plaintiff requesting that he furnish any information which he believed was relevant to his questioned scores. In addition, he was offered an opportunity to take the examination again at a regularly scheduled time at no cost. If he elected to do so, and his retest score came within 50 points of the questioned score, defendant stated that the questioned score would be forwarded to the law schools. On the other hand, if the retest score failed to confirm the questioned score, or if plaintiff refused to take the retest, defendant indicated that it would cancel the questioned score and notify the law schools that plaintiffs score was canceled "due to serious doubt as to [its] authenticity.”
In response to this letter, plaintiff submitted a sworn statement that he did not cheat on the examination. However, he refused to take a retest. He then commenced the instant action for a declaratory judgment and an injunction restraining defendant from canceling his April, 1974 test score; from notifying the law schools that this action was taken because of the score’s doubtful authenticity; and compelling defendant to report the April, 1974 score to the law schools as a valid score.
In support of its motion to dismiss the complaint, defendant alleges that plaintiff is barred by the contract he entered into when he agreed on his registration forms to accept the conditions set forth in the bulletin concerning the administration of the test and the reporting of results to the law schools. Defendant contends that its actions are in full accord with the following provisions in the bulletin: "We reserve the right to cancel any test score if, in our sole opinion, there is adequate reason to question its validity. * * * If we cancel a score, we will notify the law schools that * * * were to receive the score”.
As a further argument in support of its motion, defendant claims that so much of the injunctive relief sought by plaintiff *661 as would restrain defendant from notifying the law schools that it was canceling plaintiff’s test score because of its doubtful authenticity constitutes a prior restraint against publication of information, and would therefore be violative of the First Amendment to the United States Constitution.
Plaintiff, in opposition to the motion, contends that the agreement relied upon by defendant is void as a contract of adhesion. Further, he argues that defendant’s actions are in violation of the due process clause of the Fourteenth Amendment.
With respect to that portion of the injunctive relief seeking to restrain defendant from notifying the schools of the reason it was canceling plaintiff’s scores, the court is satisfied that the granting of such relief would not constitute a prior restraint in violation of the First Amendment. The guarantees of free speech and a free press provided for in the Constitution would in no way be impinged upon by an order of this court prohibiting defendant from sending such a notice, which would seriously reflect upon plaintiff’s honesty and integrity and could conceivably affect his future livelihood. No useful purpose would be served by it. The failure of defendant to forward plaintiff’s scores to the law schools with no further action on its part, or a simple notice to the schools that plaintiff had elected not to have his scores forwarded would have exactly the same result; the schools would deny plaintiff admission. Thus the possible harm to plaintiff from sending out of the notice contemplated by defendant far exceeds the possible useful purposes which would be served thereby, which so far as the court can determine are nil, either to society as a whole or to the law schools. In such context, the First Amendment has no relevancy. It "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.” (Roth v United States, 354 US 476, 484.) It was not adopted to permit the commercial publication of a possibly libelous statement which might have serious consequences upon the future livelihood of the subject, where absolutely no useful social purpose is served thereby. Under such circumstances, it has been held that the First Amendment does not protect commercial speech. (Pittsburgh Press Co. v Human Rel. Comm., 413 US 376; Valentine v Chrestensen, 316 US 52; Grove v Dun & Bradstreet, 438 F2d 433, 437.)
New York Times v Sullivan (376 US 254, 266), which held *662 that the commercial publication there involved was protected by the First Amendment, is clearly distinguishable. The court so held because the communication in question, although commercial, "communicated information, expressed opinions, recited grievances, protested claimed abuses and sought financial support on behalf of a movement whose existence and objections are matters of the highest public interest and concern.” The same cannot be said for the proposed publication here. In fact, none of the cases relied upon by defendant involved the prior restraint of a commercial publication such as that before the court in the instant case.
Nor did plaintiff ever agree that a notice in the form contemplated could be sent to the law schools in the event defendant canceled his scores. The bulletin provided merely that in such event, defendant would notify the law schools that were to receive the scores. Nothing was said about advising them of the reasons for the cancellation. Accordingly, defendant’s motion to dismiss that part of plaintiff’s complaint seeking to enjoin defendant from notifying the law schools that it has canceled plaintiff’s test scores because of serious doubts as to their authenticity, is denied.
We turn now to a consideration of that portion of the injunctive relief sought by plaintiff wherein he seeks to restrain defendant from canceling his April, 1974 test scores and to compel it to forward the scores to the law schools. As noted above, the right to cancel any test score if in its opinion there was adequate reason to question its validity was expressly reserved to itself by defendant in the bulletin, and plaintiff accepted that as well as all other conditions set forth in the bulletin when he completed his registration form. Nevertheless, plaintiff contends that he is not bound by his agreement, because, he argues, his contract with defendant is a contract of adhesion, and therefore void. A contract of adhesion is one entered into between parties with unequal bargaining power. They are typically standard contracts which are offered by the party with strong bargaining power to the weaker party on a take it or leave it basis. The instant agreement would appear to fit this description. Almost every accredited law school in the United States requires a candidate for admission to take the LSAT. Thus, when plaintiff decided to attend law school he had no alternative but to accept the standard conditions fixed by defendant for all test takers. Plaintiff could neither contract with a party other than defendant to take a law *663 school aptitude test, since no such entity exists, nor indicate to defendant that the terms contained in the bulletin were not acceptable to him. In the latter case it is clear that if he had done so he would not have been permitted to take the examination.
However, while plaintiffs description of the agreement herein as a contract of adhesion may be justified, his conclusion that it is therefore void, is not. Where the court finds that an agreement is a contract of adhesion, effort will frequently be made to protect the weaker party from the agreement’s harsher terms by a variety of pretexts, while still keeping the elementary rules of the law of contracts intact. (Kessler, Contracts of Adhesion-Some Thoughts about Freedom of Contract, 43 Col L Rev 629, 633.) The court may, for example, find the obnoxious clause "ambiguous”, even where no ambiguity exists, and then construe it against its author; or it may find the clause to be against public policy and declare it unenforceable; or finally, the court may hold that although the offending clause prohibits a recovery by plaintiff ex contractu, it does not prohibit a recovery in tort.
Thus, the issue in the instant case is whether the clause reserving to defendant itself the right to cancel plaintiffs test score if there is a question about its validity, and requiring him to take a retest in such event, is so unfair and unreasonable that the court, having found it a part of a contract of adhesion, will disregard it by means of one or more of the pretexts above. The issue as thus stated must be answered in the negative. To the extent that defendant can accurately predict the aptitude of a candidate for law school by means of its test results, it performs a highly valuable service not only to the law schools but to the public as well. Moreover, the accuracy of its predictions is defendant’s sole stock in trade. The less accurate as a forecaster its tests are, the less value they have to the law schools. Thus, if defendant reasonably believed that the test scores of plaintiff as scored on the April, 1974 test, did not accurately reflect his aptitude for law school, it acted within its right to protect its own image as well as its obligation to the schools who are its clients in canceling plaintiffs scores and requiring him to take a retest. Almost the identical issue was before the court in De Pina v Educational Testing Serv. (31 AD2d 744). There the examination involved was the College Entrance Examination Board Test, also administered by this same defendant, to students *664 seeking admission to college. In that case, after plaintiffs scores were forwarded to the school of his choice, and he was accepted for admission, a letter from plaintiffs high school guidance counsellor caused defendant to investigate plaintiffs mathematics score. The investigation disclosed circumstances indicating that plaintiff had achieved his math score by cheating. Accordingly, on the basis of a clause in its agreement with plaintiff similar to the one in the instant case, defendant requested that plaintiff take a retest, and indicated that if he refused to do so, it would notify the college to which he had been admitted that it was rescinding plaintiffs mathematics score because of doubts about its validity. Plaintiff sought to enjoin defendant from taking such action, and the Supreme Court granted his motion for a preliminary injunction. On appeal, the Appellate Division reversed the lower court’s order and held that "defendant acted within its rights and indeed within its obligations and duties to the (college) and to the public in requesting the plaintiff take a re-examination.” (At p 745.)
In the instant case, the evidence that plaintiff did not achieve his scores on the April, 1974 LSAT unaided was sufficient to justify the action contemplated by defendant. Moreover, its offer of a free retest under normal testing conditions with the understanding that it would forward plaintiffs April, 1974 scores if the retest score came within 50 points of the earlier scores was eminently fair and reasonable under the circumstances. Finally, with respect to plaintiffs claim that defendant’s actions violated the due process clause of the Constitution, it is sufficient to note that the Fourteenth Amendment is applicable only to State action and not private action and hence is not relevant here. Even if it were, the court finds no basis to conclude that plaintiff was not afforded due process.
For all the foregoing reasons, the motion to dismiss so much of the complaint as seeks to enjoin defendant from canceling plaintiffs April, 1974 test scores, and to compel it to forward those scores to the law schools is granted.

 The scores of KL, who was unknown to plaintiff, were not questioned because he had achieved scores in the same range as those on the April, 1974 examination on two prior occasions on which he took the LSAT.