■ JENNIFER E. CORTALE, Respondent, v EDUCATIONAL TESTING SERVICE, Appellant. [674 NYS2d 753] —In an action, *inter alia,* for a permanent injunction and a judgment declaring the validity of the score earned by the plaintiff on the December 1995 Graduate Record Examination, the defendant appeals from so much of an order of the Supreme Court, Suffolk County (Underwood, J.), entered April 24, 1997, as denied its cross-motion, *inter alia,* for summary judgment dismissing the complaint.

Ordered that the order is affirmed insofar as appealed from, with costs.

In October 1995 the plaintiff Jennifer Cortale took the Graduate Record Examination (hereinafter GRE) administered by the defendant Educational Testing Service (hereinafter ETS) as a condition to gaining entrance to graduate school. Having achieved higher scores on practice tests she had taken as part of a preparatory course offered by the Princeton Review, the plaintiff was dissatisfied with her October score and registered to take the GRE a second time in December 1995. Upon her second examination, the plaintiff attained a score on the verbal portion of the examination which exceeded her October score by more than 200 points. Deeming this increase to be suspicious, ETS conducted an investigation into the plaintiff's testing, and ultimately determined that there was substantial evidence to invalidate that score. In essence, ETS concluded, through statistical analysis and an examination of the pattern of erasures on the plaintiff's answer sheet and that of another student, referred to as Candidate B, who may have been seated near her during the administration of the exam, that the plaintiff achieved her increased score by copying answers from Candidate B.

In accordance with its procedures, ETS notified the plaintiff of its preliminary findings and provided her the opportunity to submit evidence to refute the circumstantial evidence that she had cheated on the December 1995 GRE. The plaintiff submitted evidence, *inter alia,* that she had sustained an injury to

her hand and had been taking a prescription narcotic pain reliever shortly before the October examination, thus explaining why her score might have been substantially lower in October than in December when she was no longer disabled. She also submitted academic evidence tending to demonstrate that her December results were more consistent with her academic abilities, and that her lower October scores were anomalous. She requested that ETS furnish various items to her to enable her to defend against the charge, including copies of her test booklet, as well as the test booklet of Candidate B. ETS did provide certain materials, but not the test booklets, which it had destroyed. Additional correspondence was exchanged, but ETS was not persuaded and determined that the plaintiff's December scores would be invalidated.

The plaintiff commenced this action and obtained a preliminary injunction prohibiting ETS from notifying the plaintiff's chosen schools of the invalidation of her December scores pending the determination of this matter. ETS does not appeal from so much of the order as awarded the plaintiff a preliminary injunction. However, ETS cross-moved, *inter alia,* for summary judgment, arguing that as a matter of law, it had the right and the obligation to invalidate the plaintiff's score and notify the affected schools. The Supreme Court denied the cross motion (*see, Cortale v Educational Testing Serv.,* 171 Misc 2d 928). We now affirm.

In *Dalton v Educational Testing Serv.* (87 NY2d 384) the Court of Appeals dealt with an analogous controversy concerning ETS suspicions that a high school student had cheated on a Scholastic Aptitude Test. As the court explained, applicants who take examinations administered by ETS are obligated to abide by its rules concerning investigations into questionable examination results. The relationship between ETS and test takers results from the contract between them (*see, Matter of K. D. v Educational Testing Serv.,* 87 Misc 2d 657; *see also, Johnson v Educational Testing Serv.,* 754 F2d 20, *cert denied* 472 US 1029). Pursuant to the contract, ETS has the right to question test results it deems suspicious, and to provide enumerated options to examinees, including a retest at no additional charge (*see, Matter of Yaeger v Educational Testing Serv.,* 158 AD2d 602). Additionally, the contract provides that ETS will undertake an investigation and, *inter alia,* will consider relevant material submitted by examinees which might refute its suspicion of cheating (*see, Dalton v Educational Testing Serv., supra,* at 390). In discharging its contractual obligation, ETS must honor its duty of good faith and fair deal-

ing, and may not act arbitrarily or irrationally (*see, Dalton v Educational Testing Serv., supra,* at 389).

In the instant case, ETS, in reliance upon purely circumstantial evidence, determined that the plaintiff was guilty of cheating. This determination was based largely upon a statistical analysis of the pattern of erasures and incorrect answers appearing on the plaintiff's answer sheet, as compared to that of Candidate B. ETS submitted numerous affidavits and other evidence tending to substantiate its methodology. However, in opposing the cross motion for summary judgment, the plaintiff adduced expert evidence which attacked those statistical analytical methods as unreliable. Moreover, ETS itself submitted an article from The Princeton Review Foundation, ostensibly in support of its motion, which was critical of its own investigative policies. The article charged that ETS had a tendency to ignore most evidence submitted by test takers because of an institutionalized bias. This article, *submitted by ETS,* potentially casts doubt upon whether ETS gave adequate consideration to the plaintiff's evidence, and whether it exercised its investigatory discretion in good faith. Indeed, in *Dalton v Educational Testing Serv.* (206 AD2d 402, 404, *mod* 87 NY2d 384, *supra*), this Court found that ETS wrongfully failed to consider relevant evidence which would have exonerated an examinee accused of cheating, and had violated its contractual duty of good faith and fair dealing by so doing. The Court of Appeals did not disturb that finding. We find that the plaintiff's submissions have demonstrated the existence of a similar issue of fact on the instant record. Similarly, in light of the disconsonant expert opinions in the record concerning the validity of the ETS investigatory statistical analysis, factual issues of good faith and fair dealing are presented for a fact finder's determination.

It is also significant that in this case the plaintiff requested that ETS provide her with her original test booklet and that of Candidate B, so as to enable her to demonstrate from her "scratch work" that the responses on her computer-scanned answer sheet were in fact her own. ETS, however, had destroyed these booklets, allegedly in the due course of its business. While there is no indication in the record that ETS deliberately destroyed evidence so as to frustrate the plaintiff's efforts to clear her name and prove her entitlement to her score, given the serious educational and vocational ramifications that may flow from a finding that the plaintiff cheated, the failure to preserve such evidence may also implicate the good faith of ETS. The stakes for the plaintiff are sufficiently high that she

should not be deprived of every reasonable ability to prove her case.

The cross motion of ETS for summary judgment rested entirely upon circumstantial evidence. "A determination based on circumstantial evidence is essentially one to be made by the fact-finder" (*Abramo v Pepsi-Cola Buffalo Bottling Co.*, 224 AD2d 980, 981). Moreover, on a motion for summary judgment, the evidence is to be viewed in a light most favorable to the party opposing the motion, giving her the benefit of every favorable inference (*see, Rosen Furs v Sigma Plumbing & Heating Corp.*, 249 AD2d 276; *National Enters. Corp. v Dechert, Price & Rhoads*, 246 AD2d 481; *Santiago v Frito-Lay, Inc.*, 235 AD2d 528; *Gant v Sparacino*, 203 AD2d 515). In light of the aforementioned issues concerning whether ETS acted in good faith, clearly it has not met its evidentiary burden. Since this case presents genuine issues of credibility, many of which go to the heart of the duty of good faith and fair dealing, it is clear that the Supreme Court correctly denied the ETS motion for summary judgment.

The remaining contentions of ETS are without merit. Bracken, J. P., Miller, O'Brien and Copertino, JJ., concur. [*See,* 171 Misc 2d 928.]