Dear Mr. Picard:
You have requested an Attorney General Opinion on behalf of the Board of Elementary and Secondary Education (BESE) concerning its ability to reinstate Mr. Larry Winters' 1995 National Teachers Examination (NTE) score that was cancelled by Educational Testing Service (ETS) and to reinstate his certification as a principal. You ask such questions be considered in light of a judgment granting a preliminary injunction to two other similarly situated individuals. You also seek an opinion as to the process due to Mr. Winters in this case.
Statutory mandates regarding the certification of principals are found in La.R.S. 17:7.1, which provides in pertinent part:
 B.(1) After August 15, 1986, except as otherwise provided in Paragraph (2) of this Subsection, any persons applying for initial certification as a principal or vice, assistant, or deputy principal, hereafter referred to as a principal, in addition to any other requirements of the State Board of Elementary and Secondary Education, shall have passed the administrative portion of the National Teachers Examination produced by the Educational Testing Service at a level determined by the State Board of Elementary and Secondary Education not later than August 1, 1986, which determination shall be based on a validation study to be completed by the board no later than July 31, 1986. The validation study shall be submitted to the Joint Committee on Education for its review prior to adoption of a passage score.
 (2) Beginning August 15, 2003, and thereafter, any person applying for initial certification as a principal or superintendent, in addition to any other requirements of the State Board of Elementary and Secondary Education, shall have satisfactorily passed the appropriate assessment instrument selected by the board at a level determined by the board.
 C. The State Board of Elementary and Secondary Education may adopt such rules as are necessary for the orderly implementation of this Section and may make further provisions with regard to qualifications and requirements not inconsistent with this Section.
 Pursuant to La.R.S. 17:7.1(B)(1), BESE conducted a validation study for the Educational Administration and Supervision Area Exam of the NTE produced by ETS and set a passing score at 620.
The requirements for obtaining a secondary school principal endorsement are found in BESE Bulletin 746. A review of the requirements to obtain a secondary school principal endorsement in Bulletin 746 beginning in 1993 to the present version indicates that the requirements have not changed. BESE has not changed the type of test or required score, as permitted by La.R.S. 17:7.1(B)(2). In addition to the required NTE score, Bulletin 746 also requires an individual seeking a secondary school principal endorsement to have a valid Type A Louisiana Teaching Certificate for the secondary school, at least five years of classroom teaching experience, and various educational requirements. When an individual has attained the above requirements, he or she is eligible for a provisional principal endorsement. A regular principal endorsement is added to his or her teaching certificate upon completion of a two-year Principal Internship Program.
You indicate that Mr. Winters took the Educational Administration and Supervision Area Exam of the NTE on July 8, 1995 and scored 590. Mr. Winters retook the test in November of 1995 and scored 700. As a result of Mr. Winters November 1995 test results and the other qualifications necessary having been met, a provisional secondary school principal endorsement was added to his teaching certificate. You state that in January of 1997, ETS wrote to individuals who had taken the above test, including Mr. Winters. The letter stated that ETS had been informed that an unauthorized person gained access to the test before its administration and may have distributed test information. The letter went on to offer the test-takers the option to take a retest free of charge to confirm the validity of the test scores or to cancel the scores and receive a refund.
On July 25, 1997, the Department of Education was notified by ETS that it had cancelled Mr. Winters' November 1995 score. On July 31, 1997, the Department of Education notified Mr. Winters that, due to the cancellation of his score, it had been removed from the Teacher Certification database and his authorization to serve as a principal had been removed from his teaching certificate.
Two other test takers, Marshall Thibodeaux and Edward D. Brown, took the same test in March of 1995. They received a letter from ETS that was similar to the one Mr. Winters received. They also received a letter from the Department of Education that was similar to the one Mr. Winters received. In August of 1997, Mr. Thibodeaux and Mr. Brown filed a Petition for Injunctive Relief against the local school boards that employed them and the Department of Education. Marshall Thibodeaux andEdward D. Brown v. The Louisiana Department of Education, et. al., 19th Judicial District Court, Docket Number 441,731, Division A. On December 23, 1997, the court signed a judgment granting a preliminary injunction. The judgment granting the preliminary injunction prohibited the Department of Education from removing Mr. Thibodeaux and Mr. Brown's cancelled NTE scores from the Teacher Certification database and from removing their authorization to serve as a principal from their teaching certificates. A review of the suit record in this matter indicates that the Judgment Granting Preliminary Injunction was the last pleading filed in the case.
We will first address BESE's ability to reinstate Mr. Winters' 1995 NTE score that was cancelled by ETS and to reinstate the principal endorsement on his teaching certificate without respect to the above referenced preliminary injunction. Mr. Winters' November of 1995 NTE score was cancelled by ETS, as reported to the Department of Education on July 25, 1997. It is the opinion of this office that, because of this cancellation, there is no longer a score to reinstate. The cancellation of Mr. Winters' November 1995 NTE score resulted from actions taken by ETS, over which BESE had no control. The cancellation of this score, in our opinion, is the equivalent of this score never existing; therefore, it cannot be reinstated.
In order to have a provisional principal endorsement reinstated on his teaching certificate, Mr. Winters must meet all of the requirements set forth in BESE Bulletin 746. This includes the required score on the assessment instrument adopted by BESE pursuant to La.R.S. 17:7.1. Currently, that instrument is the Educational Administration and Supervision Area Exam of the NTE and the required score is 620. By reinstating Mr. Winters' principal endorsement if he has not achieved an NTE score of 620, BESE would not only be acting in violation of its own rules, but also in violation of the only statutory mandate necessary to be certified as a principal, i.e. passage of the assessment instrument selected by BESE at the level determined by BESE. La.R.S. 17:7.1(B).
The Judgment Granting Preliminary Injunction issued in MarshallThibodeaux and Edward D. Brown v. The Louisiana Department of Education,et. al. has no affect, in our opinion, on BESE's ability to reinstate Mr. Winters' NTE score or his principal endorsement. Judgments issued in causes of action affect only those individuals who are parties to the suit. Mr. Winters was not a party plaintiff in the Thibodeaux suit. Accordingly, the Judgment Granting Preliminary Injunction prohibited the Department of Education from taking actions related to the NTE scores of Mr. Thibodeaux and Mr. Brown only. This prohibition cannot be extended to Mr. Winters, simply because the subject matter of his dispute is similar to that of Mr. Thibodeaux and Mr. Brown.[1]
We will next address what process, if any, was due to Mr. Winters when his NTE score was removed from the Teacher Certification database and his provisional authorization to serve as a principal was removed from his teaching certificate. As stated above, the NTE was administered by ETS. Mr. Winters' November 1995 NTE score was cancelled by ETS. BESE had no control over, nor could it reinstate the cancelled score under any circumstances. La.R.S. 17:7.1 requires that in order to receive certification as a principal, an individual must pass the administrative portion of the NTE at the level determined by BESE. When Mr. Winters' NTE score was cancelled, he no longer met the statutory and regulatory requirements to maintain the provisional principal endorsement on his teaching certificate. The certification of a principal who has not passed the administrative portion of the NTE as required by La.R.S. 17:7.1
is beyond BESE's statutory authority.
The action that forced the removal of Mr. Winters provisional principal endorsement was the cancellation of his November 1995 NTE score by ETS. Although you have asked that we review what process was due to Mr. Winters by BESE, we believe that the applicable analysis is that of the cancellation of Mr. Winters' NTE score by ETS.[2] The cancellation of Mr. Winters score is what necessitated the removal of the provisional principal endorsement from his teaching certificate. The removal of the principal endorsement was not within the Department of Education's discretion, if it was to remain in compliance with law. In addition, the remedy sought, reinstatement of the score, could only be granted by ETS.
To the extent that the actions taken by the Department of Education in the removal of Mr. Winters' provisional authorization to serve as a principal from his teaching certificate are viewed as distinct, we will analyze the applicable due process principles.
The Fourteenth Amendment to the United States Constitution's Due Process Clause is implicated where property or liberty interest are at stake. Procedural due process is concerned with the process used to deprive a person of a protected interest. Bd. of Regents of StateColleges v. Roth, 408 U.S. 564, 569-70 (1972). In order for due process rights to be invoked, Mr. Winters would have to have a property interest in the principal endorsement that was placed on his teaching certificate. In Bd. of Regents of State Colleges v. Roth, the United States Supreme Court determined:
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it.
* * *
 Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source of state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[3]
 In a companion case, the Court elaborated on its definition: "[a] person's interest in a benefit is a `property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.[4]
The facts you have presented in your opinion request are unique and after an extensive review of case law, we have found it void of cases with analogous facts. There are cases that find that a license, once issued, may create a property interest in the holder.[5] However, generally those cases presume that the license in question was issued in compliance with law in the first place.[6]
We believe that the more fitting analogy is to those cases that evaluate an individual's property right based on his legitimate claim of entitlement to the issuance of the license or certificate. The application of this analysis is fostered by the fact that the principal endorsement issued to Mr. Winters' was provisional and, once his NTE score was cancelled, the Department of Education was essentially placed in the position of evaluating Mr. Winters' qualifications for a principal endorsement.
The Fifth Circuit in Martin v. Memorial Hospital at Gulfport described procedural due process as follows:
 . . . [P]rocedural due process is a positivist notion, designed to protect property interests, existing not by force of the due process clause itself, but established by reference to some independent source, such as state law. (citations omitted) The extent to which an individual interest is a property interest protected by the due process clause must be determined by an examination of the source of the interest. In cases such as this, where the interest is created by some state law or contract, the limitation of the interest are determined by examination of the state law or contract. (citations omitted)[7]
 The source of Mr. Winters' claim of entitlement to a property interest in maintaining the principal endorsement on his teaching certificate is La.R.S. 17:7.1
and BESE Bulletin 746. An entitlement to a principal endorsement is created when the criteria set forth therein have been met. Constitutionally, what this means is that an individual cannot be deprived of a principal endorsement, once issued, without notice and a hearing, as long as the criteria are met.
If such criteria are not met, an analysis of a claim of entitlement must be performed. The Second Circuit, in Yale Auto Parts, Inc. v.Johnson has set forth the following test for determining a claim of entitlement:
 . . . whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Otherwise the application would amount to a mere unilateral expectancy not rising to the level of a property right guaranteed against deprivation by the Fourteenth Amendment.[8]
 Absent a score of 620 on the administrative portion of the NTE, Mr. Winters was not entitled to and BESE could not grant a principal endorsement on his teaching certificate. Upon cancellation of his November 1995 NTE score, from the Department of Education and BESE's perspective, that score did not exist. Any remedy of reinstatement had to be sought with ETS. Mr. Winters had no legitimate claim of entitlement to a principal endorsement on his teaching certificate, without having obtained a score of 620 on the NTE. It is therefore the opinion of this office that Mr. Winters did not have a property right guaranteed against deprivation by the Fourteenth Amendment. Despite this finding, we must also note that even if Mr. Winters was permitted to bring his claims before BESE, the outcome of BESE's process would have required it to deny his claim because he lacked the qualifications for the principal endorsement. Only ETS can reinstate Mr. Winters' November 1995 NTE score.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _____________________________ Katherine M. Whitney Assistant Attorney General
CCF, Jr:KMW:lrs
[1] The preliminary injunction issued in the Thibodeaux case also has no precedential value. A preliminary injunction is an interlocutory order issued incidental to the main demand for permanent injunctive relief. It is designed to preserve the status quo pending a trial of the issues on the merits of the case. Silliman Private School Corp. v. ShareholderGroup, 789 So.2d 20 (La.App. 1 Cir. 2001); La. C.C.P. Art. 3601
[2] See Murray v. Educational Testing Serv., 170 F.3d 514 (5th Cir. 1999); Scott v. Educational Testing Serv. 600 A.2d 500 (N.J. 1991);Yaeger v. Educational Testing Serv., 158 A.D.2d 602 (N.Y. 1990); K.D. v.Educational Testing Serv., 386 N.Y.S.2d 747 (N.Y. 1976); Johnson v.Educational Testing Serv., 754 F.2d 20 (1st Cir. 1985); DePina v.Educational Testing Serv., 31 A.D.2d 744 (N.Y. 1969) addressing the propriety of the cancellation of test scores by ETS.
[3] 408 U.S. at 577.
[4] Perry v. Sindermann, 408 U.S. 593, 601 (1972).
[5] See American International Gaming Assoc., Inc. v. LouisianaRiverboat Gaming Commission, 838 So.2d 5 (La.App. 1 Cir. 9/11/02); Bellv. Burson, 402 U.S. 535 (1971)
[6] In a different context, cases involving the issuance of permits in violation of law or ordinance or in error find that holders have no property interest in such permits. Schmidt v. Parish of Jefferson,1999 WL 550207 (E.D.La. 1999); Summerchase Ltd. Partnership I, et. al. v.City of Gonzales, 970 F.Supp. 522 (M.D.La. 1997); Pailetv. City of New Orleans, et. al. 433 So.2d 1091 (La.App 4 Cir. 1983) Snyderv. City of Minneapolis, 441 N.W.2d 781 (MN 1989); Gunkel v.City of Emporia, 835 F.2d 1302 (10th Cir. 1987) See also Mellin v.Flood Brook Union School District, 790 A.2d 408 (VT 2001), wherein the court found that there was no property interest in an erroneously issued elementary endorsement on a teaching certificate.
[7] 130 F.3d 1143, 1147 (5th Cir. 1997).
[8] 758 F.2d 54 (2nd Cir. 1985).